# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Eva Price,**
**Plaintiff Below, Petitioner**

**FILED**

**June 24, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs) No. 12-1026** (Berkeley County 11-C-505)

**Morgan Financial Group and Founders**
**Financial Securities, LLC,**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Eva Price, by counsel Andrew J. Katz, appeals the order of the Circuit Court of Berkeley County, entered July 30, 2012, dismissing the complaint and ordering petitioner to submit her claims to arbitration. Respondents Morgan Financial Group ("Morgan Financial") and Founders Financial Securities, LLC ("Founders") appear by counsel John McCuskey and J. Robert Russell.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner filed a complaint in the Circuit Court of Berkeley County on June 27, 2011, alleging that respondents acted with gross negligence in failing to timely process her request to roll over her retirement account upon her transfer from the Teachers Defined Contribution System to the Teachers Retirement System in 2009. Petitioner states that as a result of that failure she did not receive service credit to which she would have been entitled under West Virginia Code § 18-7D-6. Respondent Morgan Financial was petitioner's financial planner, and Respondent Founders was the broker for her individual retirement account.

On January 17, 2012, respondents filed a motion to dismiss, to compel arbitration and to stay proceedings. They argued that petitioner's individual retirement account was controlled by an account agreement that required either party to submit any dispute to binding arbitration. On November 17, 2006, J. Edward Slonaker, organizer and sole member of Respondent Morgan Financial, and petitioner had completed a Customer Account Information form containing the following "client acknowledgement":

> By signing below, I certify the accuracy of the information contained in this
> Customer Account Information Form and that I have received and agree with the

terms of the Founders Financial Securities, LLC Account Agreement as of the month and year pre-printed on this page. THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE WHICH APPEARS IN PARAGRAPH 21, OF THIS AGREEMENT, WHICH BY SIGNING BELOW I AM ACKNOWLEDGING THAT ON THIS DAY I HAVE RECEIVED.

Paragraph 21 of the Founders agreement, referenced in the customer account information form, provides:

This section of the Agreement contains the predispute arbitration agreement between us. By signing this Agreement we agree as follows[:]

- All parties are giving up the right to sue each other in court, including the right to trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.
- The ability of the parties to obtain documents, witness statements and other discovery is generally limited in arbitration than in court proceeding (*sic)*.
- The arbitrators do not have to explain the reason(s) for their award.
- The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.
- The rules of the arbitration forum in which the claim is filed, or any amendment thereto, shall be incorporated into this Agreement.

I agree to arbitrate any claim, controversy or dispute which may arise out of my relationship with Founders Financial, as to the construction, performance or breach of any agreement, any duty arising from any agreement or other relationship with you, or to any transaction(s) with or through you, whether based on events occurring prior to or after the date of this Agreement, only before the National Association of Securities Dealers Regulation, Inc.

My agreement to arbitrate shall apply to Founders Financial, its directors, officers and employees and to any Registered Representative that services my account.
- Neither you nor I wave (*sic*) any right to seek equitable relief pending arbitration.
- No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except the extent stated herein (*sic*).

2

The circuit court granted respondents' motion to dismiss and compel arbitration by order entered on July 30, 2012. Petitioner filed her notice of appeal with this Court on August 29, 2012. She presents three assignments of error: (1) Respondent Morgan Financial was not a party to the agreement she had with Respondent Founders, and she is not bound by the arbitration clause with respect to it; (2) the arbitration provision of the agreement is procedurally unconscionable; and (3) the arbitration provision of the agreement is substantively unconscionable.

We have explained:

> This Court will preclude enforcement of a circuit court's order compelling arbitration only after a *de novo* review of the circuit court's legal determinations leads to the inescapable conclusion that the circuit court clearly erred, as a matter of law, in directing that a matter be arbitrated or that the circuit court's order constitutes a clear-cut, legal error plainly in contravention of a clear statutory, constitutional, or common law mandate.

Syl. Pt. 4, *McGraw v. Am. Tobacco Co.*, 224 W.Va. 211, 681 S.E.2d 96 (2009).

With this standard in mind, we turn to petitioner's arguments on appeal. As to the first issue she raises—that Respondent Morgan Financial is not a party to the agreement—we note that Paragraph 21 explicitly included the agreement to arbitrate "any claim, controversy or dispute which may arise out of [the] relationship with Founders Financial" and applied to "its directors, officers and employees and to any Registered Representative" servicing the account. Mr. Slonaker, the sole member of Respondent Morgan Financial, signed the Founders customer account information form on a line labeled "rep signature" and provided a representative number on the same line. Respondent Morgan Financial is not excluded from the arbitration agreement.

In her second and third assignments of error, petitioner urges us to find that the arbitration agreement was unconscionable. A determination of unconscionability requires a two-part analysis: whether the contract is procedurally unconscionable, and whether it is substantively unconscionable. *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, ___, 729 S.E.2d 217, 227 (2012) ("*Brown II*"). "To be unenforceable, a contract term must—'at least in some small measure'—be both procedurally and substantively unconscionable." *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, ___, 737 S.E.2d 550, 558 (citing Syl. Pt. 20, *Brown v. Genesis Healthcare Corp., 228* W. Va. *646,* 658, 724 S.E.2d 250, 262 (2011) ("*Brown I*"); *State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W. Va. 486, 498–99, 729 S.E.2d 808, 820–21 (2012)).

> "Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the

manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Syllabus Point 17, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011).

Syl. Pt. 10, *Brown II.*

Petitioner entered into a contract for respondents to provide financial investment services, and there is no evidence that she was unable to obtain these services from any other source. The record on appeal reveals no imbalance that would lead us to find that the parties were on unequal footing at the time the agreement was made. Petitioner, now in her early sixties, was an educated woman working as a teacher. The contract was not complex. The customer account information form contained a distinct reference, directly above the signature line, to the agreement to arbitrate, and that language was printed in capitalized letters. And though the agreement was a pre-printed form contract and its terms were not negotiated—rendering it a contract of adhesion—that "is the beginning point for analysis, not the end of it [.]" *State ex rel. Dunlap v. Berger*, 211 W. Va. 549, 557, 567 S.E.2d 265, 273 (2002) (quoting *Am. Food Mgmt., Inc. v. Henson,* 434 N.E.2d 59, 62–63 (Ill.App.1982)); see also *State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W. Va. 486, 498–99, 729 S.E.2d 808, 820–21 (2012) ("while adhesion contracts are worthy of additional scrutiny, they are 'generally enforceable because it would be impractical to void every agreement merely because of its adhesive nature.'" (citations omitted)). The parties' agreement is not procedurally unconscionable under our precedents.

Finally, we turn to the question of substantive unconscionability.

"Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." Syllabus Point 19, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011).

Syl. Pt. 12, *Brown II.*

The agreement to arbitrate was binding on both parties. "In assessing substantive unconscionability, the paramount consideration is mutuality." *State ex rel. Richmond Am. Homes of W.Va., Inc. v. Sanders*, 228 W.Va. 125, 137, 717 S.E.2d 909, 921 (2011) (quoting *Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4th 638, 664, 9 Cal.Rptr.3d 422, 442 (2004)). The record is devoid of any evidence that petitioner would have been required to bear any greater burden in the circumstances of arbitration than respondents. Furthermore, petitioner places great emphasis on the costs of an arbitration conducted by the designated authority; however, the costs were

readily discoverable by her at the time she agreed to arbitrate her claims, and we do not find the potential costs[1] burdensome under these circumstances.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 24, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis

---

[1] Costs and fees of an arbitration conducted by the Financial Industry Regulatory Authority are dependent on the amount of the claim. For example, the filing fee for a customer ranged from $50 to $1800, and the cost of a hearing session conducted by three arbitrators could cost up to $1200. Hearing session fees were assessable in the award. Petitioner claims she has damages, including punitive damages, in excess of $100,000, and that her expenses could exceed $11,000. Her estimate, however, does not account for the assessment of expenses among parties. Furthermore, inasmuch as her estimate assumes multiple hearing sessions and expenses for potential discovery disputes and multiple subpoenas—and likewise does not consider the costs of civil discovery or a trial—we find petitioner's evaluation unpersuasive.